Jason S. Kilene
David A. Goodwin
Joseph C. Bourne (SBN 308196)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Tel.: (612) 333-8844
Fax: (612) 339-6622
jkilene@gustafsongluek.com
dgoodwin@gustafsongluek.com
jbourne@gustafsongluek.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DANIEL VON HADEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VIZIO, INC., a California corporation; and COGNITIVE MEDIA NETWORKS, INC., a Delaware corporation,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Daniel Von Haden, by his undersigned counsel, individually and on behalf of all others similarly situated, brings this class action suit against Vizio, Inc. ("Vizio") and Cognitive Media Networks, Inc. ("Cognitive"), based on Vizio's installation of tracking software on its internet-connected televisions ("Smart TVs"). Plaintiff makes the following allegations based upon his personal knowledge as to his own acts, and upon information and belief as well as upon his attorneys' investigative efforts as to Defendants' actions and misconduct, and alleges as follows:

## NATURE OF THE CASE

1. This case involves a massive, nationwide invasion of consumers' privacy perpetrated by Defendants through the secret recording of data obtained from consumers' use of their Vizio Smart TVs.

2. When consumers connect their Smart TVs to their home internet networks and watch content on their Smart TVs, Vizio uses advertising software made by Cognitive to collect large amounts of data from those consumers. This includes data on what users are watching, when they are watching it, and through what channel or application. This information is also linked to the user's IP address, which enables Vizio to learn even more about the user, including demographic details such as age, profession, and wealth indicators. An investigation conducted by ProPublica found that Vizio's technology is "watching you."[1]

3. Defendants never disclosed or obtained consent to install and use this software. Instead, they relied on the fact that most consumers lack the technical expertise to discover and disable this software on their own.

4. Plaintiff brings this class action against Defendants to enjoin them from tracking and collecting Vizio Smart TV users' personal information without consent. Plaintiff also seeks damages on behalf of himself and all similarly situated owners for violations of their privacy and consumer rights under federal and state law.

---

[1] Julia Angwin, "Own a Vizio Smart TV? It's Watching You," https://www.propublica.org/article/own-a-vizio-smart-tv-its-watching-you (last visited February 28, 2016).

CLASS ACTION COMPLAINT              - 1 -

## PARTIES

5. Plaintiff Daniel Von Haden resides in and is a citizen of Wisconsin. Plaintiff purchased two Vizio E-Series Smart TVs, model numbers E550i-B2 and E3D320VX, through a third-party retailer. Plaintiff has connected the Smart TVs to the internet and used them to view content.

6. Defendant Vizio, Inc., is a California corporation with its principal place of business located in Irvine, California. Vizio does business throughout the United States and California, including in this District.

7. Defendant Cognitive Media Networks, Inc., is a Delaware corporation with its principal place of business located in San Francisco, California. Cognitive does business throughout the United States and California, including in this District.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over Plaintiff's federal claims under the Video Privacy Protection Act, 18 U.S.C. § 2710, pursuant to 28 U.S.C. § 1331.

9. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10. The Court also has subject matter jurisdiction over all of Plaintiff's claims pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there is minimal diversity, there are more than 100 class members, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

11. This Court has personal jurisdiction over Defendants because they conduct business in California and are headquartered in California, and because the events giving rise to this action occurred, in substantial part, in California.

12. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants conduct substantial business in this jurisdiction, and the events or omissions giving rise to the claims in this action occurred within this judicial district and division.

**INTRADISTRICT ASSIGNMENT**

13. Pursuant to Civil Local Rule 3-2(e), this case is appropriately in the San Francisco Division of the Northern District of California

**FACTUAL ALLEGATIONS**

14. Vizio is a privately held consumer electronics company whose products are sold in over 8,000 stores across the United States.

15. Vizio attributes a substantial portion of its net income to sales of its Smart TVs.

16. Vizio sought to gain additional income from its Smart TVs by monetizing the viewing habits of its millions of customers and selling that information to advertisers, without adequately disclosing its use of this data to those customers.

17. Vizio Smart TVs allow users to stream movies, television shows, and other internet and popular application-based content. Since 2009, Vizio Smart TV users have streamed more than 3.5 billion hours of content. Users connect their Vizio Smart TV to their home internet network. Through the Vizio Internet App or the Vizio Internet App Plus, they can access internet-based providers, such as Netflix, Amazon Instant Video, YouTube, and Hulu.

18. Consumers pay a premium to purchase a Smart TV in order to utilize these internet-connected applications and features.

19. In late 2015, Vizio purchased a controlling interest in Cognitive for approximately $50 million.

20. Vizio installs automatic content recognition ("ACR") software on all Vizio Smart TVs, including the "Reference Series," "P-Series," "M-Series," "E-Series," and "D-Series" product lines.

21. ACR software allows Vizio to track users' activity on the Smart TVs. The ACR software searches the Smart TVs for information about the user's home network. It collects and instantly transmits network information, including IP addresses, product serial numbers, device nicknames, region and language settings, online services used, and zip code.

CLASS ACTION COMPLAINT             - 3 -

22. ACR software also records the presence of other devices connected to the home internet network, and it obtains information from those devices. The ACR software instantly transmit that information to servers ultimately controlled by Vizio.

23. Vizio's software, which recognizes on-screen content and collects consumer data on its Smart TVs, is called "Smart Interactivity."

24. Vizio claims to encrypt, to an extent, the information that is transmitted from Smart TVs to the Vizio servers. Vizio refers to this collection and transmission of private user data as "Inscape data services." In its Prospectus, Vizio brags about the scope and detail of the data collected and sold, and its potential advertising profits:

> Our Inscape data services capture, in real time, up to 100 billion anonymized viewing data points each day from our over 10 million VCUs [Vizio connected units]. Inscape collects, aggregates and stores data regarding most content displayed on VCU television screens, including content from cable and satellite providers, streaming devices and gaming consoles. Inscape provides highly specific viewing behavior data on a massive scale with great accuracy, which can be used to generate intelligent insight for advertisers and media content providers and to drive their delivery of more relevant, personalized content through our VCUs. Although we are still in the early stages of commercializing Inscape and have yet to generate meaningful revenue from it, we believe it provides an attractive value proposition to advertisers and media content providers which will enable us to further monetize it in the future.

25. Vizio collects real-time viewing behavior data in order to disseminate it to its advertising and content partners.

26. Vizio refers to the information it collects as "Non-Personal Information," which it describes as "data in a form that does not, on its own, permit direct association with any specific individual." This includes IP addresses assigned to users' internet-connected devices, their zip codes, the online services they visit, information about their Vizio products (such as MAC addresses, product model numbers, hardware and software versions, chipset IDs, and region and language settings), information about the products users request or purchase, the presence of other devices connected to users' local networks, and the number of users and frequency of use of Vizio products and services. Vizio also collects "anonymous information regarding customer activities on our websites, on Internet-connected products and services, and on Vizio's Internet store."

CLASS ACTION COMPLAINT            - 4 -

27. Technical experts have challenged Vizio's claim that the information it collects is "non-personal." For example, Extreme Tech's website states:

> "Non-personally identifiable information" is a contradiction in terms, particularly when the companies in question have access to mobile data. The entire point of Vizio's advertising push is to sell this information to companies so they can track you on multiple devices. In order to do that, they're going to need to find those devices. If an advertiser can pick up on the fact that you watch, say, Arrow in order to send you ads enticing you to watch The Flash, then that advertiser effectively knows who you are.[2]

28. The National Institute of Standards and Technology specifically characterizes IP addresses as constituting personally identifiable information.

29. After collecting data from its customers, Vizio sells their IP address, and all information obtained therefrom, to third party advertisers and data aggregators, who may then target individual consumers through their Smart TV or through any other devices connected to the user's home internet network. With the consumer's personal information, the third parties either make tailored advertisements to the users, or sell aggregated data to other companies.

30. Vizio enables this tracking software by default, but it did not disclose the existence of the tracking software on the product's packaging, during the setup of the Smart TV, or in the product's advertising. Vizio Smart TVs do not alert consumers that their Smart TVs are actively tracking them and that the information collected will be disseminated to third parties for profit.

31. The only information Vizio provides to consumers about this tracking software is located on its website, where it tells users how to turn off the tracking. Consumers must actively seek out this information, and first they must discover the existence of the software.

32. Defendants do not disclose that the Smart TVs have ACR software during setup, in advertising, or anywhere else.

33. Defendants do not disclose to consumers that they are being monitored, nor do they ask consumers to agree to any terms or privacy policy relevant to the ACR software.

---

[2] Joel Hruska, "Vizio TVs Caught Tracking Viewing Habits, Selling Data to Advertisers," http://www.extremetech.com/internet/217762-vizio-tvs-caught-tracking-viewing-habits-selling-data-to-advertisers (last visited February 28, 2016).

CLASS ACTION COMPLAINT        - 5 -

34. Defendants buried any mention of ACR to deceptively named and obscure television settings and menus. Defendants did this because they knew that consumers would not uncover the purported disclosures without help. For example, Defendants hid their privacy policy that purportedly governs how the Smart TVs collect data and how Defendants use the data in a location that requires the consumer to first load the settings menu, navigate to "System," then to "Reset & Admin" (which Defendants describe as the location to "Reset the TV to factory defaults. Administrative tasks are available here."), and then finally to Vizio's Privacy Policy.

35. The buried privacy policy is further concealed by Defendants' choice to make their consumers attempt to read the policy in small-sized font, low contrast (white text against a light blue background), on only a small fraction of the total screen. This requires consumers to stand very close to their TVs to view complex and dense boilerplate text. It is clear that Vizio intentionally made the privacy policy difficult to read.

36. In an October 2015 filing with the SEC regarding its initial public offering, Vizio revealed its concern that its customers might react negatively to the surreptitious collection of their data: "Our customers may also object to or opt out of the collection and use of their data, which may harm our business."

37. Vizio has recognized potential privacy law concerns with its profit from selling personal information to third parties without consent:

> We collect, process, store, use and to some extent disclose information collected from or about purchasers and users of our products, and from the devices themselves. The collection and use of personal information, and analysis and sharing of anonymous user data and unique identifiers to inform advertising or analyze viewing behaviors subject us to legislative and regulatory burdens, may expose us to liability, and our actual or perceived failure to adequately protect consumer data could harm our brand, our reputation in the marketplace and our business.
>
> Privacy laws and regulation, if drafted or interpreted broadly, could be deemed to apply to the technologies we use to collect, analyze and share viewing behaviors or other data collected from our Smart TVs or consumers, and could restrict our information collection methods or decrease the amount and utility of the information that we would be permitted to collect and share. . . . In addition, a determination by a court or government agency that any of our practices, or those of our agents, do not meet these standards could

CLASS ACTION COMPLAINT        - 6 -

> result in liability, or result in negative publicity, and adversely affect our business.

38. Vizio states that it requires third parties with whom it shares the data obtained by Smart Interactivity to "employ reasonable security measures" and that it "imposes strict conditions of confidentiality and use on such third parties" regarding consumers' IP addresses. But, Vizio admits, its practices and policies "may also put consumers' information at risk and could in turn have an adverse effect on [its] business."

39. In addition to violating user privacy, Vizio Smart TVs have placed users' WiFi networks at risk of cyberattack. An investigation by Avast has confirmed that Defendants' tracking software is easily manipulated to unencrypt the data that it has collected. Avast also found that there are minimal barriers between the Smart TV and other devices on the local WiFi network. This lack of safeguards could enable a hacker to use that Smart TV "as a launching pad for malware or other types of malicious scenarios."

40. Defendants' competitors, such as Samsung and LG, track users' viewing habits only if their customers affirmatively "opt in" by enabling the feature. Those practices are in stark contrast to Vizio's data collection practices, as Vizio automatically collects users' data unless the users affirmatively "opt out" by turning off the feature.

41. Defendants knew that consumers would connect their Smart TVs to their private home networks, which are typically protected by a confidential security key or password. Defendants exploited that access to scan for all devices connected to the home network. This scan gave Defendants information about all connected devices, including product names, model numbers, serial numbers, and device identifiers.

42. Vizio Smart TVs also can obtain the personalized names of computers, devices' unique addresses, and details about users' wireless internet networks. This information is usually protected behind internet firewalls and home network privacy settings, and only trusted devices have access to these private networks.

43. Defendants target advertisements on Smart TVs by compiling information collected through the Smart TVs and contracting with data brokers to "enhance" the information. By

CLASS ACTION COMPLAINT		- 7 -

contracting with data brokers, Defendants obtain information about the individuals watching particular programs and media, including their names, addresses, other demographic information, and likely more. Vizio provides as much identifying information about its consumers to the data brokers, who then match and link that information to their database of consumers. The broker then appends any information that it has to the original received data, sending the enhanced data back to Vizio. Defendants then disclose, for profit, that enhanced information to media and data analytics companies.

## **CLASS ACTION ALLEGATIONS**

44. Plaintiff brings this action on behalf of himself and all others similarly situated, as members of a proposed nationwide plaintiff class (the "Class") defined as follows:

> All persons in the United States who purchased and used a Vizio Smart TV with Smart Interactivity capability and Automatic Content Recognition Software installed.

45. The Class is so numerous that the individual joinder of all its members is impracticable. While the exact number and identification of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery of Defendants, the Class likely consists of hundreds of thousands of individuals.

46. This action is brought and may properly be maintained as a class action pursuant to the provisions of Federal Rule of Civil Procedure 23(a)(1)-(4), 23(b)(2), and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions. Common questions of fact and law exist as to all Class members which predominate over any questions affecting only individual Class members. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following:

    a. Whether Defendants unlawfully collected and disseminated Plaintiff's and Class members' personal information.

      b.      Whether Defendants disclosed to Plaintiff and Class members, before the tracking software was activated on their Vizio Smart TVs, that their personal information would be collected and disseminated to third parties.

      c.      Whether Defendants misrepresented or omitted material facts with regard to the Smart Interactivity feature of the Smart TVs.

      d.      Whether Plaintiff and Class members consented to the collection of their personal information and its sale to third parties.

      e.      Whether Plaintiff and Class members have a reasonable expectation of privacy in the information collected and disseminated by Defendants.

      f.      Whether Defendants' conduct was willful, intentional, or knowing.

      g.      Whether Plaintiff and Class members sustained monetary loss as a result of Defendants' conduct, and if so the proper measure of that loss.

      h.      Whether, as a result of Defendants' conduct, Plaintiff and Class members are entitled to damages, and the amount of damages.

      i.      Whether, as a result of Defendants' conduct, Plaintiff and Class members are entitled to equitable relief.

47. Plaintiff's claims are typical of the claims of the Class members. Plaintiff and other Class members must prove the same facts in order to establish the same claims, which apply to all Class members.

48. Plaintiff is an adequate representative of the Class because he is a member of the Class and his interests do not conflict with the interests of the Class members he seeks to represent. Plaintiff has retained counsel competent and experienced in the prosecution of consumer protection and privacy class actions, and together Plaintiff and counsel intend to prosecute this action vigorously for the benefit of the Class. The interests of Class members will fairly and adequately be protected by Plaintiff and his counsel.

49. A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system

CLASS ACTION COMPLAINT    - 9 -

could not. It would be unduly burdensome to the courts, in which individual litigation of thousands of cases would proceed. Individual litigation presents a potential for inconsistent or contradictory judgments, the prospect of a race for the courthouse, and an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expense and delay to all parties and the court system in resolving the legal and factual issues common to all claims. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

50. The various claims asserted in this action are also certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(2) because Defendants have acted on grounds generally applicable to the entire Class, thereby making appropriate final declaratory and injunctive relief with respect to the Class as a whole.

## COUNT I

### Violation of the Video Privacy Protection Act, 18 U.S.C. § 2710

51. Plaintiff incorporates the allegations in each above numbered paragraph.

52. Defendants are "video tape service providers" within the meaning of the Video Privacy Protection Act ("VPPA"). Defendants deliver videos and similar audio visual materials to consumers through their internet-connected Smart TVs, as well as through many of the pre-loaded applications available on the Smart TVs.

53. Plaintiff and Class members are "consumers" within the meaning of the VPPA because they purchased and used Smart TVs manufactured, marketed, and distributed by Defendants.

54. The information that Defendants collect through the tracking software constitutes "personally identifiable information," or "PII," within the meaning of the VPPA because the information "identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

55. Plaintiff and Class members watched movies and television shows on their Vizio Smart TVs. Defendants tracked Plaintiff and Class members' usage of the Smart TVs and collected

information on Plaintiff and Class members' viewing habits, performed scans of Plaintiff and Class members' home WiFi networks, and transmitted this information to Defendants' central databases.

56. Without Plaintiff of Class members' knowledge or consent, Defendants disclosed and continue to disclose Plaintiff and Class members' information, including PII, to unidentified and unauthorized third parties such as advertisers.

57. Defendants have not sought consent from Plaintiff or Class members to collect and disseminate their PII.

58. Defendants did not provide Plaintiff with an opportunity, in a clear and conspicuous manner, to prohibit disclosure of his PII.

59. Defendants' transmission of Plaintiff and Class members' PII to third parties constitutes knowing disclosures of Plaintiff and Class members' PII to a person within the meaning of the VPPA. 18 U.S.C. § 2710(a)(1).

60. Defendants' unlawful disclosures are a violation of the VPPA. Plaintiff seeks, on behalf of himself and the Class, damages, fees, costs, and equitable relief as allowed by the VPPA, 18 U.S.C. § 2710(c). Plaintiff and Class members seek an injunction prohibiting Defendants from collecting and disseminating PII.

## COUNT II

**Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511**

61. Plaintiff incorporates the allegations in each above numbered paragraph.

62. Plaintiff and Class members' television programming and internet-based content that they viewed or used on their Vizio Smart TVs is an "electronic communication" under 18 U.S.C. § 2510(12).

63. Defendants intentionally intercepted, used, and disclosed Plaintiff and Class members' electronic communications and the content of those communications in violation of 18 U.S.C. § 2511(1).

64. Neither Plaintiff nor Class members authorized or consented to Defendants' interception, use, and disclosure of their electronic communications.

CLASS ACTION COMPLAINT - 11 -

65. Pursuant to 18 U.S.C. § 2520, Plaintiff seeks, on behalf of himself and the Class, equitable and declaratory relief, actual damages, statutory damages, and reasonable attorneys' fees and costs.

## COUNT III

### Violation of Cal. Civ. Code § 1799.3

66. Plaintiff incorporates the allegations in each above numbered paragraph.

67. Defendants are "person[s] providing video recording sales or rental services" because they facilitate the sale and rental of videos to consumers through Vizio's internet-connected Smart TVs. Cal Civ. Code. § 1799.3(a).

68. Defendants have disclosed personal information or the contents of other records, including sales or rental information, without Plaintiff or Class members' written consent, in violation of Cal Civ. Code. § 1799.3(a).

69. Plaintiff seeks statutory damages under Cal. Civ. Code § 1799.3(c) on behalf of himself and the Class.

## COUNT IV

### Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*

70. Plaintiff incorporates the allegations in each above numbered paragraph.

71. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, protects consumers by promoting fair competition in commercial markets for goods and services.

72. The UCL prohibits any unlawful, unfair, or fraudulent business practice or act. This includes both any deception, fraud, or misrepresentation, and any suppression or omission of any material fact.

73. The specifications of a consumer product constitute a material term of any transaction because it directly affects a consumer's choice of whether to purchase a product. Any deception related to the specifications of a product is materially misleading.

74. Defendants engaged in deceptive or unfair business practices by installing the tracking software on Vizio Smart TVs and collecting, using, and transmitting consumers' viewing habits without disclosing this to consumers or obtaining their consent.

75. Defendants did not disclose that Vizio Smart TVs contain the tracking software, which is enabled by default, because they knew that consumers would not purchase the TVs if they disclosed these facts.

76. Defendants never sought or obtained consumers' consent to install or operate the tracking software on their Smart TVs.

77. Defendants injured consumers through the deceptive and unfair conduct described above. These injuries are not outweighed by any countervailing benefits to consumers, and the injury is one that consumers could not have reasonably avoided because they could not have reasonably known of or discovered the tracking software.

78. Defendants' unfair and deceptive conduct occurred during the marketing, distribution, and sale of Smart TVs, and therefore occurred in the course of Defendants' business practices.

79. If Defendants had disclosed that their tracking software was installed and operating on the Vizio Smart TVs, Plaintiff and the members of Class would not have purchased the Smart TVs, or they would have paid less for them.

80. Pursuant to Cal. Bus. & Prof. Code § 17203 and Cal. Code Civ. Proc. § 1021.5, Plaintiff seeks injunctive relief, restitution, and an award of reasonable attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendants as follows:

1. An Order certifying the Class and any appropriate subclasses thereof under the appropriate provisions of Federal Rule of Civil Procedure 23, and appointing Plaintiff and his counsel to represent the Class;

2. Declarations that the actions of Defendants, as set out above, are unlawful;

3. Appropriate injunctive and equitable relief;

CLASS ACTION COMPLAINT - 13 -

4. Compensatory damages;

5. Statutory damages;

6. Restitution and/or disgorgement;

7. Costs, disbursements, expenses, and attorneys' fees;

8. Pre- and post-judgment interest, to the extent allowable; and

9. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a trial by jury in this case as to all issues so triable.

Dated: March 11, 2016

/s/ Joseph C. Bourne
Jason S. Kilene
David A. Goodwin
Joseph C. Bourne (SBN 308196)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
jkilene@gustafsongluek.com
dgoodwin@gustafsongluek.com
jbourne@gustafsongluek.com

*Attorneys for Plaintiff and the Proposed Class*